UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

FS SOUTHBROOKE LP                                              PLAINTIFF

v.                             No. 2:21-CV-02120

NATIONWIDE GENERAL
INSURANCE COMPANY                                DEFENDANT

**OPINION AND ORDER**

Before the Court is Defendant Nationwide General Insurance Company's ("Nationwide") motion (Doc. 31) for summary judgment, statement of facts (Doc. 33), and brief (Doc. 32) in support. Plaintiff FS Southbrooke LP ("Southbrooke") filed a response (Doc. 41) and brief (Doc. 42) in opposition and statement of facts[1] (Doc. 43) under seal. Nationwide filed a reply (Doc. 46). Southbrooke also filed a *Daubert* motion (Doc. 34) to exclude expert testimony, to which Nationwide filed a response (Doc. 38) in opposition. For the reasons set forth below, the motion for summary judgment will be GRANTED IN PART and DENIED IN PART and the motion to exclude expert testimony will be TERMINATED AS MOOT.

**I.   Background**

Southbrooke purchased an apartment complex (the "Apartments") in Fort Smith, Arkansas in 2018. Southbrooke's members were aware during the buying process that "2/3's of the roofs that have not been replaced were rated a 1 on a scale of 1 to 10 by the roofing company" and would need to be replaced, and that the "Mansard was improperly installed in many areas." (Doc. 33, p. 3, ¶ 14). Nationwide issued Southbrooke a Premier Businessowners Policy, policy number ACP BPHG 3008913159 (the "Policy"), which included both property and liability coverage for the

---

[1] Southbrooke's statement of facts was filed under seal pursuant to a protective order (Doc. 27).

1

Apartments.

The Policy states Nationwide "will pay for direct physical loss of or damage to Covered Property at the described premises in the Declarations caused by or resulting from any Covered Cause of Loss." (Doc. 31-1, p. 40). "Covered Cause of Loss" is defined as "direct physical loss" unless the Policy excludes the loss, limits the loss, or the Property Loss Conditions or Property General Conditions section of the Policy limits or excludes the loss. *Id.* at 41. The Property General Conditions provides

> The following conditions apply in addition to the COMMON POLICY CONDITIONS
> . . .
>
> 4. **Policy Period, Coverage Territory**
>    Under this form:
>    a.  We cover loss or damage commencing:
>        (1) During the policy period shown in the Declarations; and
>        (2) Within the coverage territory or, with respect to property in transit, while it is between points in the coverage territory.

*Id.* at 70-71. The Declarations page states the policy period was from October 5, 2018 to October 5, 2019. The relevant exclusion portion of the Policy states

> B. **EXCLUSIONS**
> . . .
>
> 3. We will not pay for loss or damage caused by or resulting from any of the following B.3.a. through B.3.c. But if an excluded cause of loss that is listed in B.3.a. through B.3.c. results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.
>
> . . .
>
> c. **Negligent Work**
>    Faulty, inadequate or defective:
>    (1) Planning, zoning, development, surveying, siting;
>    (2) Design, specifications, workmanship, work methods, repair, construction, renovation, remodeling, grading, compaction, failure to protect the property;
>    (3) Materials used in repair, construction, renovation or remodeling; or
>    (4) Maintenance;

2

of part or all of any property on or off the described premises.

*Id.* at 59-64.

On August 27, 2019, Southbrooke, through its member Steven Ross, made a claim for "hail damage on the roof top ac unit and possible wind damage." (Doc. 44-2, p. 14). Southbrooke's claim was for $479,556.01—which included the cost of replacing all the roof surfaces and replacing or repairing all HVAC units. Nationwide investigated the claim, found portions of the claimed damage was a Covered Cause of Loss, and paid Southbrooke $27,254.61 for the covered damage. However, Nationwide denied the rest of the claim because Nationwide determined the damage was either excluded or not a Covered Cause of Loss. Southbrooke disagreed with Nationwide's partial denial of the claim and hired Peak Storm Services to provide a repair estimate. Nationwide then hired Rimkus Consulting to examine the roof and maintained its partial denial of the claim.

On April 23, 2021, Southbrooke filed a complaint against Nationwide in the Northern District of Texas alleging a breach of contract claim and violations of the Texas Insurance Code. Nationwide filed an unopposed motion to transfer the case pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties and witnesses because the Apartments and many potential witnesses are located in Fort Smith, Arkansas. The motion was granted and the case was transferred to this Court on June 29, 2021. Nationwide now moves for summary judgment and argues Nationwide is entitled to summary judgment on the Texas statutory law claims because Arkansas law applies. Nationwide further argues it is entitled to summary judgment on the breach of contract claim because the roof was damaged before the policy period began, the Policy excludes faulty workmanship, and Southbrooke has not allocated damages between covered and non-covered damages.

## II. Legal Standard

On a motion for summary judgment, the Court views the record in the light most favorable to the nonmoving party, grants all reasonable factual inferences in the nonmovant's favor, and only grants summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(a); *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016). The nonmovant may not rely only on allegations in the pleadings, but must identify specific and supported facts that will raise a genuine and material issue for trial. *Ryan v. Cap. Contractors, Inc.*, 679 F.3d 772, 776 (8th Cir. 2012) (quoting *Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1393 (8th Cir. 1997)). Facts are material when they can "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes are genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. "While the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Haggenmiller*, 837 F.3d at 884 (quotations omitted).

## III. Analysis

### A. Choice of Law

Because the case was transferred under 28 U.S.C. § 1404(a), Texas choice-of-law rules apply. *Steen v. Murray*, 770 F.3d 698, 701 (8th Cir. 2014) ("When a case is transferred under § 1404(a), the transferee district court applies the choice-of-law rules of the transferor court's State." (citing *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990)). However, no choice-of-law analysis is necessary "if there is not a true conflict between the laws . . . on the pertinent issue."

*Weitz Co., LLC v. Lloyd's of London*, 574 F.3d 885, 889-890 (8th Cir. 2009) (citing *Mod. Equip. Co. v. Cont'l W. Ins. Co.*, 355 F.3d 1125, 1128 n.7 (8th Cir. 2004)). Under Texas law, "Texas courts presume that other states' laws are the same as its own; thus, the party advocating the use of a different state's laws bears the burden of rebutting that presumption." *Playboy Enters., Inc. v. Sanchez-Campuzano*, 519 Fed. App'x 219, 225 (5th Cir. 2013) (citation omitted).

Nationwide argues Southbrooke's Texas statutory claims should be dismissed because Arkansas law applies and Arkansas offers no private right of action under its insurance statutes. Southbrooke concedes that its claims fail under the Arkansas insurance statutes, but instead argues that the Texas statutory bad faith claim alleged in the complaint and Arkansas's common law bad faith claim do not conflict and a choice-of-law analysis is unnecessary, therefore, the bad faith claim should not be dismissed.

Under Texas law a statutory bad faith claim mirrors the Texas common law standard which requires the insured to "establish that the insurer failed to settle the claim even though it 'knew or should have known that it was reasonably clear that the claim was covered.'" *Alhamzawi v. GEICO Cas. Co.*, 216 F. Supp. 3d 764, 768 (N.D. Tex. 2016) (citing *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 54-55 (Tex. 1997)). "Under Arkansas law, a bad-faith-refusal-to-pay claim requires a showing that the insurer engaged in affirmative misconduct." *Hall v. Modern Woodmen of Am.*, 68 F.3d 1120, 1121 (8th Cir. 1995). The affirmative misconduct "must be dishonest, oppressive, or carried out with a state of mind characterized by hatred, ill will, or a spirit of revenge." AMI 2304; *Hall*, 68 F.3d at 1121. "[T]he claim cannot be based on a good-faith denial of a claim by an insurer when an actual controversy exists with respect to liability on the policy." *Hall*, 68 F.3d at 1121 (citations omitted). "Arkansas Courts are likewise clear about what conduct is not bad faith: negligence, bad judgment, nightmarish red tape, hardball, and delaying

5

investigations for months." *Willis v. Shelter Mut. Ins. Co.*, No. 12-cv-101, 2012 WL 5818165, at *1 (E.D. Ark. Nov. 15, 2012).  The Court finds Texas statutory bad faith and Arkansas common bad faith claims conflict because Arkansas requires a showing of affirmative misconduct whereas Texas merely requires a showing that the insurer knew or should have known that it was reasonably clear the claim was covered.  Because the laws conflict, a choice-of-law analysis is required.

Texas looks to the Restatement (Second) of Conflict of Laws for choice-of-law rules governing contracts.  *Sonat Explo. Co. v. Cudd Pressure Control, Inc.*, 271 S.W.3d 228, 231 (Tex. 2008).  Section 188 of the Restatement covers contracts that do not contain an express choice of law provision and provides that "an issue in contract [is] determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and parties." *Id.* at 233.  The Court looks to the following five factors to determine which state has the most significant relationship: "(a) the place of contracting, (b) the place of negotiation, (c) the place of performance, (d) the location of the subject matter, and (e) the domicile, place of incorporation, and place of business of the parties." *Id.*

Here, the Court finds the most important factors are that the Apartments are located in Arkansas, the Policy was issued from an agent's office in Arkansas, and the Policy contains several Arkansas-specific provisions.  These factors demonstrate Arkansas has the most significant relationship to the parties, therefore, the Court will apply Arkansas law.

    **B.**    **Texas Statutory Claims**

Because the Court has determined Arkansas law applies and, as Southbrooke concedes, Arkansas does not recognize a private right of action under its insurance statutes, Plaintiff's Texas statutory claims will be dismissed.  Southbrooke argues that the Court should construe Nationwide's motion for summary judgment on the statutory claims as a motion for judgment on

the pleadings because Nationwide's motion did not attack the merits of the statutory claims. However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. "[S]ummary judgment is particularly appropriate when only questions of law are involved, rather than factual issues that may or may be subject to genuine dispute." *K.G. v. Sergeant Bluff-Luton Cmty. Sch. Dist.*, 244 F. Supp. 3d 904, 914 (N.D. Iowa 2017) (citing *Cremona v. R.S. Bacon Veneer Co.*, 433 F.3d 61, 620 (8th Cir. 2006)). Southbrooke offers no case law or persuasive argument for why the Court should construe the motion as a motion for judgment on the pleadings. Southbrooke's main purpose in its argument appears to be to request the Court dismiss its Texas statutory claims without prejudice. However, "[t]he discontinuance of the case in such circumstances . . . deprive[s the defendant] of the benefit of a decision in its favor." *Int'l Shoe Co. v. Cool*, 154 F.2d 778, 780 (8th Cir. 1946). Nationwide's motion for summary judgment was timely filed, complied with the Federal Rules of Civil Procedure and this Court's local rules, and the Court finds no reason to construe the motion as anything other than one for summary judgment. Even viewing the record in the light most favorable to Southbrooke and granting all reasonable factual inferences in Southbrooke's favor, because Arkansas law applies, there are no facts that would permit Southbrooke to bring Texas statutory claims and the claims will be dismissed with prejudice.

    **C.**    **Arkansas Bad Faith Claim**

Southbrooke argues that even if Arkansas law applies, its complaint adequately states an Arkansas common law bad faith claim. Southbrooke points to the factual allegations in its complaint that "Nationwide failed to, with good faith, effectuate a prompt, fair, and equitable settlement of the claims when liability was reasonably clear . . . [and r]efused to pay the claim

7

without conducting a reasonable investigation with respect to the claim" and argues these factual allegations support both a Texas statutory bad faith claim and an Arkansas common law bad faith claim. (Doc. 1, p. 4, ¶ 12). However, as discussed above, Arkansas requires a showing of affirmative misconduct whereas Texas merely requires a showing that the insurer knew or should have known that it was reasonably clear the claim was covered. Southbrooke's complaint does not contain any factual allegations that would support a bad faith claim under Arkansas law. *See Selmon v. Metro. Life Ins. Co.*, 277 S.W.3d 196, 202 (Ark. 2008) ("The tort of bad faith does not arise from a mere denial of a claim; there must be affirmative misconduct."). Southbrooke has not alleged an Arkansas bad faith claim, and the Court will not construe its Texas statutory bad faith claim as one.

        **D.**      **Arkansas Statutory Failure to Pay**

Southbrooke further argues that Texas Insurance Code Chapter 542 is identical to Ark. Code Ann. § 23-79-208(a)(1) because both statutes provide statutory damages, interest, and attorneys' fees for an insurer's failure to timely pay damages, and if Arkansas law applies Southbrooke has adequately stated a claim under Ark. Code Ann. § 23-79-208(a)(1). The Court agrees. Ark. Code Ann. § 23-79-208 provides a 12% penalty and attorneys' fees against insurers when a liable insurer fails to pay within in the time specified in the insurance policy. *See S. Pine Helicopters, Inc. v. Phx. Aviation Managers, Inc.*, 358 F.3d 1086, 1087 (8th Cir. 2004). "The purpose of § 23-79-208 is to punish the unwarranted delaying tactics of insurance companies." *State Farm Auto. Ins. Co. v. Stamps*, 292 S.W.3d 833, 836 (Ark. App. 2009) (internal quotations and citation omitted). "In cases applying section 23-79-208(d)(1), no demand other than the filing of suit is required under section 23-79-208." *Id.* Because Southbrooke's complaint asserts a breach of contract claim for Nationwide's alleged failure to pay covered damages under the Policy,

8

the complaint sufficiently makes a demand under Ark. Code Ann. § 23-79-208.

### E.      Breach of Contract

Nationwide argues it is entitled to summary judgment on Southbrooke's breach of contract claim because the claimed damage to the roofs and air conditioning units occurred before the policy period. Further, if any damage occurred during the policy period, the Policy's faulty workmanship exclusion applies, and Southbrooke has failed to distinguish its claimed damages between faulty workmanship and damages resulting from any Covered Cause of Loss.

"The provisions of an insurance contract 'are to be interpreted by the court in the plain and ordinary meaning of the terms and cannot be construed to contain a different meaning.'" *Unigard Sec. Ins. Co. v. Murphy Oil USA, Inc.*, 962 S.W.2d 735, 739–40 (Ark. 1998) (quoting *Horn v. Imperial Cas. & Indem. Co.*, 636 S.W.2d 302, 303 (Ark. 1982)). "The terms of an insurance contract are not to be rewritten under the rule of strict construction against the company issuing it so as to bind the insurer to a risk which is plainly excluded and for which it was not paid." *Id*. at 750 (quoting *S. Farm Bureau Cas. Ins. Co. v. Williams*, 543 S.W.2d 467, 470 (Ark. 1976)).

If coverage for a loss exists, it must then be determined if exclusionary language within the policy eliminates the coverage. *See Castaneda v. Progressive Classic Ins. Co.*, 166 S.W.3d 556, 560-61 (Ark. 2004) (citing *Norris v. State Farm Fire & Cas. Co.*, 16 S.W.3d 242 (Ark. 2000)). Exclusions must be expressed in clear and unambiguous language. *See id.* If language is unambiguous, the plain language of the policy will be used. *Id.* (citing *Elam v. First Unum Life Ins. Co.*, 57 S.W.3d 165 (Ark. 2001)). Language is ambiguous if "there is a doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation." *Harasyn v. St. Paul Guardian Ins. Co.*, 75 S.W.3d 696 (Ark. 2002). When language is ambiguous, the policy will be construed "liberally in favor of the insured and strictly against the insurer."

9

*Castaneda*, 166 S.W.3d at 560–61.

Neither party argues the Policy is ambiguous nor do they dispute that wind and/or hail damage is a Covered Cause of Loss. Instead, Nationwide argues that emails between Southbrooke's members while buying the Apartments demonstrate the damage was present before October 5, 2018, the date the policy period began. However, as Southbrooke points out, Nationwide's claim notes state

> THERE HAVE BEEN 4 EF-0 WIND EVENTS ON LOCATION SINCE POLICY INCEPTION. EF-0 WIND EVENTS REFER TO WIND SPEEDS BETWEEN 65-85 MPH ACCORDING TO THE NATIONAL WEATHER SERVICE. THESE WIND SPEEDS CORRELATE WITH "LIGHT DAMAGE" ACCORDING TO THE SCALE. SOME MISSING AND/OR DISPLACED SHINGLES WOULD BE EXPECTED AFTER EXPEREIENCING THESE WIND SPEEDS.

(Doc. 44-2, p. 11). Viewing the record in a light most favorable to Southbrooke, the Court finds a question of material fact exists as to when the damage occurred.

Nationwide next argues that Southbrooke's claimed damage is excluded under the Policy's faulty workmanship exclusion because Southbrooke's engineering expert claimed that some of the roofing surface must be replaced because of "departures from common construction practices." (Doc. 31-7, p. 14). However, Southbrooke's expert also found that some portions of the roof did have wind damage, which Nationwide does not dispute is a Covered Cause of Loss. A question of fact exists as to the cause of damage to the roof, and it is Southbrooke's burden at trial to demonstrate the damage is a Covered Cause of Loss. Nationwide's motion for summary judgment on the breach of contract claim will be denied.

**IV.     Motion to Exclude Expert Testimony**

Southbrooke's motion to exclude expert testimony argues Nationwide's expert Thomas H. Veitch should be excluded because Veitch's purported testimony is to provide an improper legal conclusion that Nationwide did not act in bad faith in its investigation. Because this opinion and

10

order dismisses Southbrooke's bad faith claim, the Court finds a ruling on the motion to exclude expert testimony is unnecessary and the motion will be terminated as moot.

## V. Conclusion

IT IS THEREFORE ORDERED that Nationwide's motion (Doc. 31) for summary judgment is GRANTED IN PART and DENIED IN PART. Southbrooke's Texas statutory claims are DISMISSED WITH PREJUDICE. Southbrooke's breach of contract claim, including its demand under Ark. Code Ann. § 23-79-208, remains pending for trial.

IT IS FURTHER ORDERED that Southbrooke's motion (Doc. 34) to exclude expert testimony is TERMINATED AS MOOT.

IT IS SO ORDERED this 20th day of April, 2022.

/s/ P. K. Holmes, III
P.K. HOLMES, III
U.S. DISTRICT JUDGE